UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NATIONAL LUMBER COMPANY
n/k/a BFS GROUP, LLC,

    Plaintiff,

v.     CASE NO.:_____

EVANSTON INSURANCE COMPANY,

    Defendant.
_____/

**COMPLAINT**
**DECLARATORY RELIEF REQUESTED**
**DEMAND FOR A JURY TRIAL**

National Lumber Company n/k/a BFS Group, ("National Lumber" or "Plaintiff") files this Complaint against Evanston Insurance Company ("Evanston"). Plaintiff shows the Court as follows:

**I.     INTRODUCTION**

Defendant Evanston insured National Lumber through Evanston's Architects and Engineers Professional Liability, Architects, Engineers and Contractors Pollution Liability, Technology Based Services, and Computer Network Security policy with endorsements to National Lumber, Policy Number MKLV7PL0004010 (the "Policy"). The Policy provides liability coverage for design and pollution issues, including mold. National Lumber timely submitted a claim under the Policy related to claims asserted by a general contractor against National Lumber related to design

1

issues and mold. Evanston agreed to provide a defense to National Lumber under the Policy.

However, despite Evanston agreeing and raising no objections to National Lumber proceeding with its defense with its current counsel, Evanston has yet to reimburse National Lumber any money for $2.4 million in defense costs that National Lumber began incurring over three (3) years ago. Evanston also failed to provide coverage for the final underlying arbitration award. Due to Evanston's claims mishandling, including failure to issue any adequate reservation of rights letter and satisfy statutory requirements as set forth below, Evanston must also indemnify National Lumber for the final award of $2.5 million.

Due to Evanston's aforementioned failures, Plaintiff National Lumber seeks declaratory relief and damages as set forth below. National Lumber has also submitted a statutory claim pursuant to Fla. Stat. § 624.155 and reserves to right to amend the complaint.

## II. PARTIES, VENUE, AND JURISDICTION

1. National Lumber is a Delaware company with its principal office located in Mansfield, Massachusetts.

2. Defendant Evanston Insurance Company is an Illinois company, with its primary headquarters located in Illinois. Evanston is a foreign corporation for the purposes of jurisdiction and venue.

3. Defendant Evanston issued the Policy insuring National Lumber across the County, including the project giving rise to claims under the Policy located in

Atlantic Beach, Duval County, Florida. A true and correct copy of the Policy is attached hereto as **Exhibit 1**.

4. This is an action for declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. § 2201, and Chapter 86 of the Florida Statutes, and for breach of contract and waiver and estoppel.

5. Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1332 and 1367, because there is complete diversity among the Parties as they are citizens of different states, and the amount in controversy exceeds the sum of $75,000.00, exclusive of all interest and costs.

6. Personal jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1391, because the actions (or inaction) that give rise to the claims stated herein occurred in this District, the property for the insurance claim at issue is located in this District, and Evanston is subject to personal jurisdiction within this District.

### III.   ALLEGATIONS COMMON TO ALL COUNTS

7. National Lumber Massachusetts Business Trust & Subsidiaries ("National Lumber Business Trust") is the named insured in the Policy.

8. The term "Insured" in the Policy includes the named insured and subsidiaries of the named insured.[1]

9. A screenshot of the definition of "Subsidiary" in the Policy is provided below:[2]

---

[1] Policy Section IV.A.
[2] Policy Section VIII.P.

P. **"Subsidiary"** means any corporate entity while more than 50% of the outstanding securities representing the present right to vote for the election of such entity's directors are owned by the Named Insured directly or indirectly, if such entity was so owned on the inception date of this Policy; or:

1. was so owned prior to the inception date of this Policy and was insured under a policy issued by Underwriters of which this Policy is a renewal;

2. becomes so owned after the inception date of this Policy, provided the revenues of the entity do not exceed 20% of the Named Insured's Annual Revenues as set forth in their most recent **Application**; or

Provided that this Policy only provides coverage for acts, errors or omissions or **Pollution Conditions** taking place while the corporate entity is so owned by the Named Insured.

10. As the sole stockholder of National Lumber, National Lumber Business Trust owned more than 50% of the outstanding securities representing the present right to vote for the election of National Lumber's directors.

11. National Lumber Business Trust owned National Lumber on the inception date of the Policy.

12. National Lumber, as a subsidiary to National Lumber Business Trust, is an insured under the Policy.

13. Evanston issued the Policy that afforded coverage to National Lumber for 2020-2021.

14. Evanston also issued a policy to National Lumber for the prior year insuring the same risks.

15. On June 25, 2019, the general contractor on a senior living project located in Atlantic Beach, Duval County, Florida (the "Project") issued a notice of intent letter to National Lumber to provide "all related engineered design, submittals and material procurement to the [Project] associated with your scope of work."

16. On or about July 23, 2019, National Lumber entered into a subcontract with a general contractor to provide all engineered design, submittals, and material procurement related to framing and trusses (the "Subcontract") to the Project.

17. The Subcontract required National Lumber to carry professional liability insurance.

18. Certain disputes, including design and mold issues, arose between National Lumber and the general contractor that were arbitrated (the "Dispute"). The general contractor asserted claims in excess of $10 million against National Lumber that included mold allegations and issues with the design of the trusses, including punitive damages that could have resulted in an award up to $100 million had the general contractor prevailed on all of its claims.

19. The design and mold claims made by the general contractor in the Dispute fit squarely within the meaning of covered claims under the four corners of the Policy.

20. National Lumber timely notified Evanston of the claim under the Policy arising out of the Dispute.

21. On April 9, 2020, Evanston acknowledged the claim and confirmed to National Lumber that a claim file had been opened as claim number MXXL64418 (the "Claim").

22. On April 13, 2020, National Lumber notified Evanston that it was working with attorneys in Florida related to the defense of the Dispute.

23. On August 6, 2020, the general contractor sent a letter to National Lumber demanding damages associated with mold on the Project ("Mold Letter").

24. National Lumber sent the Mold Letter to Evanston.

25. The Mold Letter makes allegations that fit squarely within the meaning of covered claims under the four corners of the Policy.

26. On August 13, 2020, Evanston acknowledged receipt of the Mold Letter, agreed to defend National Lumber, and agreed to proceed with National Lumber's current counsel of choice. See **Exhibit 2** attached hereto.[3] A screenshot of said agreement to defend National Lumber is included below:

> From: Couillard, Sarah <Sarah.Couillard@Markel.com>
> Sent: Thursday, August 13, 2020 3:42 PM
> To: Mark Barnett <mbarnett@national-lumber.com>
> Subject: [redacted] Atlantic Beach, FL / Markel file: MXXL64418
>
> Hello, Mark –
>
> The broker forwarded the attached claim letter, dated August 6, 2020, from [redacted] regarding lumber at the referenced project which developed mold and is deemed unusable, per [redacted]. As you will recall, we initially received the March 17, 2020 letter directed to National Lumber which advised of their termination of the contract.
>
> Is this claim to be incorporated into the ongoing issues on this project as was referenced within the prior e-mails below?
>
> When you have a chance, please let me know if Florida counsel must be retained for the property damage being asserted. We can assign counsel to provide a defense for this alleged pollution condition.
>
> Thank you, Mark. I will be available on Tuesday or any day thereafter to discuss this further. If you would like to contact our office before then, please call John Cummings @ 847-572-6317.
>
> Sarah Johnston Couillard
> Senior Claims Examiner
>
> Markel®
> Rosemont, IL
> Direct: (847) 572-6334
> Fax: (847) 572-6338
> Sarah.Couillard@Markel.com
> www.markelcorp.com
> Please report all new losses to newclaims@markelcorp.com

---

[3] **Exhibit 2-4** were redacted to remove references to the exact project location and general contractor.

27. Evanston issued no reservation of rights letter or notice related to the Claim and its defense obligation.

28. National Lumber kept Evanston informed about the Dispute by supplying Evanston with the arbitration demand and amended demands, as well as periodic updates throughout the Dispute process.

29. On December 10, 2020, Evanston again reconfirmed its agreement to defend National Lumber related to the Dispute. See **Exhibit 3** attached hereto. A screenshot of said confirmation of agreement to defend National Lumber is included below:

> **From:** Couillard, Sarah <Sarah.Couillard@Markel.com>
> **Sent:** Thursday, December 10, 2020 3:10 PM
> **To:** Kathleen Beattie
> **Subject:** ▮▮▮▮▮▮▮▮▮ Atlantic Beach, FL / Markel file: MXXL64418
>
> WARNING: Email is from outside NL - USE CAUTION on links/attachments
>
> Kathy –
>
> Thank you for taking my call this afternoon and for briefly discussing this matter.
>
> Our company opened a file earlier this year after receiving notice of a 3/17/20 letter to National Lumber from ▮▮▮▮ ▮▮▮▮ related to issues at this project. We later received a copy of another letter from ▮▮▮▮ directed to NL on 8/6/20 which asserted a claim for allegedly damaged lumber due to exposure and resultant mold.
>
> Communications I then had with Mark Barnett revealed the applicable contract contained a mold prevention exclusion. Also, Mark conveyed that NL's existing, local Florida counsel might take on this mold/materials aspect to the claim as well. If, however, it was preferred that we retain separate counsel to review and defend that aspect, we would do so under the policy.
>
> As you know, a mediation took place but did not result in a resolution at that time. I'm curious to know what the current status is and would look forward to learning more at your office's convenience.
>
> Thank you, Kathy, for taking the time to speak with me earlier. Take care!
>
> Sarah
> Sarah Johnston Couillard
> Senior Claims Examiner
>
> Markel®
> Rosemont, IL
> Direct: (847) 572-6334
> Fax: (847) 572-6338
> Sarah.Couillard@Markel.com
> www.markelcorp.com
> Please report all new losses to newclaims@markelcorp.com

30. On December 8, 2021, Evanston again reconfirmed its agreement to defend National Lumber related to the Dispute. See **Exhibit 4** attached hereto. A screenshot of said confirmation of agreement to defend National Lumber is included below:

> **From:** Couillard, Sarah <Sarah.Couillard@Markel.com>
> **Sent:** Wednesday, December 8, 2021 1:51 PM
> **To:** tim.ford@hwhlaw.com
> **Cc:** Mark Barnett; Kathleen Beattie
> **Subject:** ▮▮▮ v National Lumber (counterclaim defense) / Hill Ward Henderson file: ▮ / Markel file: MXXL64418
>
> WARNING: Email is from outside NL - USE CAUTION on links/attachments
>
> Good afternoon, Tim –
>
> We are the professional liability carrier for National Lumber and have recently advised Mark Barnett that we will be providing a defense under a Reservation of Rights for the counterclaim filed against NL by ▮▮▮.
>
> When you have a chance, Tim, I would like to touch base with you regarding the rates you may offer to carriers for insurance defense work. Providing we can agree on the rates, we would also provide our attorney guidelines which we would ask you to review and consider. Going forward, we would ask that the work and expenses associated with the defense of the counterclaim be billed separately to our company via the Legalexchange e-billing system. I see in our system that a colleague here worked with Mark Criser of your firm. Good to know your accounting department has had interaction with our e-billing system already!
>
> Thank you, Tim. I look forward to hearing from you at you convenience via e-mail and/or phone. I am available tomorrow morning for a call. Otherwise, I am available again next week.
>
> Sarah
>
> Sarah Johnston Couillard
> Senior Claims Specialist
> Markel®
> Rosemont, IL
> Direct: (847) 572-6334
> Fax: (847) 572-6338
> Sarah.Couillard@Markel.com
> Please report all new losses to newclaims@markelcorp.com

31. The Dispute was arbitrated on March 28-April 2 and April 4-7, 2022. National Lumber provided Evanston updates leading up to, during, and after the arbitration.

32. On April 20, 2022, National Lumber updated Evanston on the defense costs incurred to date.

33. The arbitrators issued an interim award on July 11, 2022, and a final award on August 30, 2022, both of which were provided to Evanston. The interim award found that National Lumber furnished labor, services and materials for wood framing, wood trusses, and sheathing for framing and roof work. The services included design work related to the trusses, which the general contractor raised as part of the Claim in the arbitration. The interim and final award denied the general contractor's mold claims. The final award required National Lumber to pay approximately $2.5 million to the general contractor.

34. On September 1, 2022, Evanston requested that National Lumber provide another update on defense costs incurred to date.

35. On September 8, 2022, National Lumber advised Evanston that National Lumber would provide its defense costs. National Lumber also advised Evanston that it intended to satisfy the final award and requested that Evanston "confirm approval or advise if you have any objection in writing."

36. On September 19, 2022, Evanston issued a reservation of rights letter related to paying the arbitration award.

37. The September 19, 2022 reservation of rights letter is the first and only reservation of rights letter that Evanston sent to National Lumber related to the Dispute or Claim.

38. To be clear, the reservation of rights letter does not deny coverage for defense costs.

39. On September 29, 2022, National Lumber paid the final award in the amount of $2,502,785.88 to avoid incurring any interest.

40. On October 6, 2022, National Lumber provided its updated defense costs incurred to date to Evanston and made a settlement demand on Evanston associated with its payment of the arbitration award and its defense costs.

41. To date, despite agreeing to defend National Lumber and after repeated requests from National Lumber for payment of its defense costs, Evanston has not paid anything related to National Lumber's defense costs.

42. National Lumber has continued to incur attorney's fees and costs associated with Evanston's failure to uphold its end of the bargain under the Policy despite Evanston's numerous written confirmations that it would defend National Lumber related to the Dispute and Claim.

43. National Lumber was subsequently acquired by ProBuild Company, LLC, which subsequently changed its name to BFS Group, LLC.

## IV.   COUNTS

### COUNT I – DECLARATORY JUDGMENT

44. Plaintiff incorporates and realleges the preceding paragraphs as though fully set forth herein.

45. Plaintiff National Lumber requests a final declaratory judgment finding that Evanston owes Plaintiff National Lumber the full amount of defense fees and costs it has paid, as well as the total amount of the underlying arbitration award it paid.

46. Plaintiff National Lumber timely notified Evanston of the Dispute, giving rise to Evanston's obligation to defend National Lumber.

47. There is no applicable exclusion in the Policy that would preclude Evanston's coverage obligations, including its duty to defend.

48. Evanston admitted that it had a duty to defend National Lumber on August 13, 2020, December 10, 2020, and December 8, 2021. See **Exhibits 2-4**.

49. Due to Evanston's failure to pay any of National Lumber's $2.4 million in defense costs despite agreeing to defend National Lumber and Evanston's failure to recognize its other obligations under the Policy, there exists a bona fide, actual present, and practical need for a declaration of Evanston's duty and obligation to provide National Lumber with coverage and defense of the Dispute under the Policy.

50. National Lumber also requests a declaratory judgment that Evanston is responsible for indemnifying National Lumber in the amount of $2,502,785.88 for the final award paid by National Lumber given Evanston's claims handling and agreement to pay National Lumber's defense costs for nearly three (3) years during the pendency of the Dispute and Claim.

51. National Lumber also requests a declaratory judgment that Evanston has waived and is estopped from asserting any coverage defenses given Evanston's admissions in its August 13, 2020, December 10, 2020, and December 8, 2021 emails

that it would provide a defense and failure to issue a proper and timely reservation of rights letter during the relevant time periods. See Count III.

52. All proper and present antagonistic or adverse interests are before the Court by proper process.

53. The Parties' relative rights and obligations under the Policy are dependent upon the facts and law applicable to the facts affecting coverage under the Policy.

54. This demand for declaratory judgment is not made for purposes of seeking a legal opinion, but rather is needed to resolve an existing dispute which creates doubt between the parties as to their legal rights, responsibility, and obligations under the Policy.

55. Nonetheless, Evanston refuses to pay the defense costs or indemnify National Lumber for the final award arising out of the Dispute, giving rise for the need to file this instant lawsuit.

WHEREFORE, National Lumber seeks a judgment in its favor, declaring and adjudicating that Evanston was obligated to, at a minimum, defend National Lumber, reimburse National Lumber for defenses costs of approximately $2.4 million, and indemnify National Lumber in the amount of $2,502,785.88 for the final award, plus reasonable attorneys' fees and expenses, interest, and such other and further relief as the Court deems just and proper.

## COUNT II – BREACH OF CONTRACT

56. Plaintiff incorporates and realleges the preceding paragraphs as though fully set forth herein, specifically all paragraphs in Count I are realleged in this Count as if fully stated herein.

57. The Policy constitutes a contract between National Lumber and Evanston.

58. National Lumber performed its duties under the Policy by paying the premium and providing notices to Evanston related to the Dispute.

59. The August 13, 2020, December 10, 2020, and December 8, 2021 emails from Evanston to National Lumber constitute separate confirmations of the Policy coverage whereby Evanston agreed to defend National Lumber. See **Exhibits 2-4**.

60. Evanston had and has an obligation to pay for National Lumber's defense of the Dispute under the Policy and separate email confirmations that it would provide a defense to National Lumber.

61. Evanston breached the Policy, the August 13, 2020 email confirmation, the December 10, 2020 email confirmation, and the December 8, 2021 email confirmation by failing and refusing to pay for National Lumber's defense of the Dispute despite agreeing to provide a defense.

62. Evanston breached the Policy, the August 13, 2020 email confirmation, the December 10, 2020 email confirmation, and the December 8, 2021 email confirmation by failing and refusing to reimburse National Lumber for defense costs incurred despite agreeing to provide a defense.

63. National Lumber suffered damages, at a minimum, of approximately $2.4 million for attorney's fees, arbitration costs, expert costs, and other costs necessitated by the defense of the Dispute.

64. Evanston had an obligation to pay for the final award under the Policy and its course of dealing in agreeing to defend National Lumber and failing to issue a reservation of rights letter.

65. Evanston breached the Policy by failing and refusing to pay the final award upon National Lumber's demand.

66. National Lumber also suffered damages of approximately $2.5 million for paying the final award.

WHEREFORE, National Lumber demands judgment against Evanston in an amount to be proven at trial for Evanston's breach of contract, plus reasonable attorneys' fees and expenses, interest, and such other and further relief as the Court deems just and proper.

## COUNT III – BREACH OF STATUTORY REQUIREMENTS

67. Plaintiff incorporates and realleges the preceding paragraphs as though fully set forth herein.

68. Under Fla. Stat § 627.426(2)(a), Evanston had 30 days to issue a written notice of reservation of rights from when it knew or should have known of the coverage defense, yet it failed to do so.

69. Evanston did not issue a written notice of reservation of rights from when it knew or should have known of the coverage defense within 30 days after the notice of the Claim or the Mold Letter.

70. Once the threshold requirement of the reservation of rights letter has been met, which Evanston did not meet, Evanston had 60 additional days to deny coverage, defend under a nonwaiver agreement after full disclosure of the rights and responsibilities of the parties, or retain mutually agreeable counsel to defend the insured. See Fla. Stat § 627.426(2)(b).

71. Evanston did not deny coverage to provide a defense within 60 days.

72. Evanston did not defend under a non-waiver agreement after full disclosure of the rights and responsibilities of the parties within 60 days.

73. Evanston agreed to proceed with National Lumber's current counsel as mutually agreeable counsel to defend National Lumber, but to this day has not paid any defense costs incurred.

74. Because Evanston failed to comply with the requirements under Fla. Stat § 627.426, Evanston is obligated to fully defend and indemnify National Lumber.

WHEREFORE, National Lumber demands judgment against Evanston that it is obligated to pay all amounts sought here by virtue of its violation of Florida statute.

## COUNT IV – WAIVER AND ESTOPPEL

75. Plaintiff incorporates and realleges the preceding paragraphs as though fully set forth herein.

76. Evanston agreed to defend National Lumber.

77. Evanston confirmed its agreement to defend National Lumber at least three different times in emails on August 13, 2020, December 10, 2020, and December 8, 2021.

78. Evanston did not issue a reservation of rights letter between April 2020 and September 2022.

79. Evanston agreed to proceed with National Lumber's current counsel as mutually agreeable counsel to defend National Lumber.

80. National Lumber incurred defense costs and paid for the award in reasonable reliance on Evanston's representations that it would defend National Lumber, pay for National Lumber's defense costs, and pay for the award in accordance with the Policy.

81. National Lumber has been damaged to its detriment by the fact that National Lumber has failed to pay for defense costs or for the award.

82. If any coverage defenses were available, Evanston waived all coverage defenses and/or is estopped from asserting any defenses because Evanston agreed to provide a defense, did not issue a reservation of rights letter, but to this day has not paid for any defense costs or for the award.

WHEREFORE, National Lumber demands declaratory judgment against Evanston that it has waived and is estopped from asserting any coverage defenses such that Evanston owes all amounts sought herein.

## V. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

a. Order a trial by jury on all of Plaintiff's claims that are so triable;

b. Enter a judgment in favor of Plaintiff on each of the enumerated Counts, for defense costs, the payment of the award, as well as reasonable attorneys' fees, costs, and expenses;

c. Enter a judgment declaring that Evanston had an obligation to defend National Lumber against given the admissions in **Exhibits 2-4** and/or reimburse National Lumber for the claims alleged in the underlying Dispute and to pay the final award;

d. Enter a judgment declaring, if any coverage defense existed, that Evanston has waived its rights or is estopped from asserting any coverage defenses under the Policy for defense costs or monetary final awards that National Lumber was obligated to pay as damages as a result of the underlying Dispute;

e. Enter a judgment for the recovery of Plaintiff's pre-judgment and post-judgment interest in accordance with applicable law; and

f. Grant further relief as this Court may deem just and proper.

Dated:  October 31, 2023

> /s/ Timothy C. Ford
> Bradley Arant Boult Cumming, LLP
> Timothy C. Ford, Esq.
> Florida Bar No. 173770
> 100 N. Tampa St. Suite 2200
> Tampa, Florida 33602
> tford@bradley.com
> *National Lumber Company n/k/a BFS Group, LLC*